**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Interactive Wearables, LLC,<br><br>　　　　　　　　　　　*Plaintiff*,<br><br>　v.<br><br>Polar Electro Oy and<br><br>Polar Electro Inc.,<br><br>　　　　　　　　　　　*Defendants*. | Case No. 19-cv-3084<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Interactive Wearables, LLC ("Plaintiff") for its complaint of patent infringement in this matter, hereby alleges through its attorneys as follows:

**Nature of the Action**

This is an action for patent infringement of United States Patent *Nos.* 9,668,016 (the "'016 Patent") and 10,264,311 (the "'311 Patent") (collectively referred to herein as the "Patents-in-suit") under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, seeking damages and other relief under 35 U.S.C. § 281, *et seq.*

**The Parties**

1. Plaintiff Interactive Wearables, LLC is a Delaware limited liability company with its principal place of business at 75 Montebello Road, Suffern, New York 10901.

2. Upon information and belief, defendant Polar Electro Oy is a Finnish company with its principal place of business in Kempele, Finland, with U.S. based operations through its U.S. entity Polar Electro Inc.

3. Upon information and belief, defendant Polar Electro Inc. is a wholly owned

subsidiary of Polar Electro Oy, and is a New York limited liability company with a principal place of business at 15 Grumman Road West, Suite 1200, Bethpage, NY 11714.  Polar Electro Oy and Polar Electro Inc. are collectively referred to herein as "Polar" or "Defendants."

### Jurisdiction and Venue

4. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code §100, *et. seq.*, §§ 271, 281, and 284 - 85, among others.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

6. This court has personal jurisdiction over Polar.  Upon information and belief, Polar has directly or indirectly through one or more of its subsidiaries, affiliates, partners, or other related parties, conducted and/or continues to conduct business within the State of New York, including in this Judicial District.  Polar or its agents have committed and continue to commit acts of infringement in the United States, the State of New York and this Judicial District by, among other things, making, using, testing, importing, offering for sale, and/or selling the accused products that infringe the Patents-in-suit, and/or inducing the infringement of others of the Patents-in-suit in this Judicial District.  Additionally, upon information and belief, this Court also has personal jurisdiction over Defendant Polar Electro Inc. because it is incorporated in New York State and has its principal place of business in this Judicial District, and thus has purposefully availed itself of the privileges and benefits of the laws and courts of New York State and this Judicial District.

7. The exercise of jurisdiction over Polar would not offend traditional notions of fair play and substantial justice.

8. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 (b) and (c) and § 1400(b) because, among other reasons, Defendant Polar Electro Inc. has its principal place of business in this Judicial District, and has transacted business and has committed and continues to commit acts of patent infringement in this Judicial District, entitling Plaintiff to relief. Upon information and belief, Defendant Polar Electro Oy is a foreign corporation located in Finland, and manufactures and ships and sells product into the United States. For example, upon information and belief, Polar or its agents have made, used, tested, sold, offered for sale, and/or imported infringing products in this Judicial District and/or have induced the infringement of others in this Judicial District.

## The Patents-In-Suit

9. On May 30, 2017, the '016 Patent, entitled "Apparatus and Method for Providing Information In Conjunction with Media Content", was duly and legally issued by the United States Patent and Trademark Office. Alexander I. Poltorak is the named inventor listed on the face of the '016 Patent.

10. The '016 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '016 Patent is attached hereto as Exhibit A.

11. Plaintiff is the owner by assignment of the '016 Patent. Plaintiff holds all rights, title, and interest in the '016 Patent, including the right to collect and receive damages for past, present, and future infringements.

12. On April 16, 2019, the '311 Patent, entitled "Apparatus and Method for Providing Information In Conjunction with Media Content", was duly and legally issued by the United States Patent and Trademark Office. Alexander I. Poltorak is the named inventor listed on the

face of the '016 Patent.

13. The '311 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '311 Patent is attached hereto as Exhibit B.

14. Plaintiff is the owner by assignment of the '311 Patent. Plaintiff holds all rights, title, and interest in the '311 Patent, including the right to collect and receive damages for past, present, and future infringements.

15. The Patents-in-suit describe and claim novel wearable content players. For example, claim 32 of the '016 Patent recites:

> A content player comprising: a receiver configured to receive content and together with the content information associated with the content, a processor coupled to the receiver and configured to process the content and the information associated with the content, memory coupled to the processor, a first display coupled to the processor, and playing device equipment coupled to the processor and configured to provide the content to a user of the content player, the playing device equipment comprising an audio player; wherein the content player is a wearable content player configured to be controlled by a wireless remote control device comprising a second display, the wireless remote control device being configured to receive commands directing operations of the wearable content player, and wherein the wireless remote control device is configured to provide to the user at least a portion of the information associated with the content.

16. Claim 32 of the '311 Patent recites:

A content player comprising: a receiver configured to receive content and together with the content information associated with the content; a processor coupled to the receiver

4

and configured to process the content and the information associated with the content; memory coupled to the processor; and playing device equipment coupled to the processor and configured to provide the content to a user of the content player, the playing device equipment comprising a video player; wherein the content player is a wearable content player configured to be controlled by a wireless remote control device comprising a remote control display, the wireless remote control device being configured to receive commands directing operations of the wearable content player, and wherein the wireless remote control device is configured to provide to the user at least a portion of the information associated with the content.

17. The claims of the Patents-in-suit are not directed to abstract ideas, and do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet or on a computer. Nor are the claims of the Patents-in-suit merely attempting to limit a method of organizing human activity or an idea itself to a particular technological environment. The claims of the Patents-in-suit are expressly directed to content playing devices, which are not abstract ideas or business practices at all. For example, the inventions of the Patents-in-suit are directed to a specific improved content player, namely a wearable content player having a display and playing device equipment, which can be wirelessly coupled with a remote control having a second display that can wirelessly control operation of the wearable content player, and which can provide a user at least a portion of the information associated with the content on the wearable content player. The claims of the Patents-in-suit recite inventions that are not merely the routine or conventional use of the Internet, computer networks, or media playing devices. The wearable content player claimed in

the Patents-in-suit exists only in a concrete and tangible form, and the claimed inventions cannot be accomplished through pen-and-paper or the human mind. Indeed, the human mind is not equipped to receive content and together with the content information associated with the content, or to provide content to a user, or to remotely control a wearable content player, or to receive commands directing operations of a wearable content player, or to provide to the user at least a portion of the information associated with content. Accordingly, the claims of the Patents-in-suit are not directed to an abstract idea.

18. The claims of the Patents-in-suit, when viewed as a whole, including as an ordered combination, are not merely the recitation of well-understood, routine, or conventional technologies or components. The claimed inventions were not well-known, routine, or conventional at the time of the invention, over fifteen years ago, and represent specific improvements over the prior art and existing systems and methods. Indeed, wearable computer devices that wirelessly paired with smartphones were not commercially available until years after the time of the invention. For example, the first watch that wirelessly paired with a cell phone, the Sony Ericsson MBW-100, was not released until 2006, approximately four years after the filing date of the original utility patent application to which the Patents-in-suit claim priority. *See, e.g.,* https://www.cnet.com/reviews/sony-ericsson-bluetooth-watch-mbw-100-review/; https://en.wikipedia.org/wiki/Smartwatch; https://www.engadget.com/2006/09/28/sony-ericsson-and-fossil-team-up-for-bluetooth-watch/. The claimed technology (*e.g.*, a wearable content player having a display and playing device equipment, which can be wirelessly coupled with a remote control having a second display that can wirelessly control operation of the wearable content player, and which can provide a user at least a portion of the information associated with the content on the wearable content player) was not known in the prior art at the time of the

6

invention, let alone well-known, routine, or conventional.  Moreover, the ability of the claimed wearable content player to wirelessly couple with a remote control improves the operations of such wearable content player device by permitting it to be operated remotely, as well as to provide information associated with the content to the user on the remote control.  The specific limitations of the claims ground the claims in the inventive technological improvement by requiring, e.g., wearable content players having receivers for receiving content and information associated with such content, which are configured to be operated wirelessly by a remote control, and to provide information associated with the content to a remote control.

19. Upon information and belief, Polar tests, makes, uses, imports, offers for sale and sells various devices including at least the Polar M600, which use and/or incorporate the technology claimed in the Patents-in-suit.

### COUNT I:  INFRINGEMENT OF THE '016 PATENT BY POLAR

20. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 19 as if set forth here in full.

21. Polar is not licensed under the '016 Patent, yet Polar knowingly, actively, and lucratively practices the claimed inventions of the '016 Patent.

22. Upon information and belief, Polar has directly infringed, literally or under the doctrine of equivalents, one or more claims of the '016 Patent by making, using, testing, offering to sell, and/or selling within the United States, and/or importing into the United States and its Territories, without license or authority, smartwatches designed to operate with Android devices and/or Apple devices, including the Polar M600 (collectively the "Accused Products"), that are covered by the claims of the '016 Patent.  Such acts result in the direct infringement of the claims of the '016 Patent, including but not limited to making, using, importing,  testing, offering to sell,

7

and/or selling the apparatus of at least claim 32.

23. For example, the Polar M600 is a content player (*see, e.g.,* https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 22 (showing that M600 provides apps to users)); comprising: a receiver configured to receive content and together with the content information associated with the content (*see, e.g.,* https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 56 (showing Polar M600 comprises Bluetooth and Wi-Fi receivers); https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 15 (showing Polar M600 has Wear OS operating system and can download apps); https://developer.android.com/training/wearables/apps/packaging.html#targeting (showing Android Manifest file is included in app file)); a processor coupled to the receiver and configured to process the content and the information associated with the content (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 91 (showing Polar M600 comprises MediaTek MT2601 processor)); memory coupled to the processor (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 91 (showing Polar M600 comprises 4GB internal storage + 512MB RAM)); a first display coupled to the processor (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 91 (showing Polar M600 comprises TFT display)); and playing device equipment coupled to the processor and configured to provide the content to a user of the content player, the playing device equipment comprising an audio player (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page

91 (showing Polar M600 comprises TFT display);

https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 39 (showing Polar M600 comprises an audio player ("you can also download music to your M600 and listen to it even if the M600 is disconnected from your phone"))); wherein the content player is a wearable content player configured to be controlled by a wireless remote control device comprising a second display, the wireless remote control device being configured to receive commands directing operations of the wearable content player (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 46 (showing Polar M600 is wearable content player);

https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 18 (showing Polar M600 can be wirelessly paired with smartphone);

https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 78, 80 (showing smartphone can receive commands to direct operations of Polar M600)); and wherein the wireless remote control device is configured to provide to the user at least a portion of the information associated with the content (see below screenshot taken from a Huawei Sensa LTE smartphone paired with Polar M600 showing list of apps installed on Polar M600 along with corresponding icons and names):



24. Polar is therefore liable for direct infringement of the '016 Patent pursuant to 35 U.S.C. § 271(a).

25. On information and belief, Polar further indirectly infringes under 35 U.S.C. § 271(b) by inducing infringement of the claims of the '016 Patent by others, including its customers and end users of its products, to make, use, provide, supply, distribute, sell and offer to sell products and systems that infringe one or more claims of the '016 Patent in the United States. As detailed above, the Polar M600 meets each limitation of at least Claim 32. Thus, the direct infringement induced by Polar includes at least the use of the Polar M600 by its customers and/or end users.

26. Polar knows that these users are infringing the '016 Patent at least by virtue of its receipt of letters dated November 21, 2018, from Michael Shanahan of General Patent Corporation to Herb Baer, President of Polar Electro Inc. and to Sari Saynajakangas of Polar Electro Oy, notifying Polar of the existence of the '016 Patent and Polar's ability to secure a

license under the '016 Patent ("November 21, 2018 Letters").  The November 21, 2018 Letters contained specific allegations that the Polar M600 infringes the '016 Patent.  Polar has the specific intent to encourage its users to infringe the '016 Patent by practicing all of the claim limitations of one or more claims of the '016 Patent, including at least claim 32.  *See, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf at pgs. 15, 18, 39, 78, 80.  Polar induces these users to operate the Accused Products, knowing that these acts constitute infringement of the '016 Patent and with specific intent to encourage those acts and encourage infringement.

27. Upon Polar's gaining knowledge of the '016 Patent from the November 21, 2018 Letters, or otherwise from this Complaint, it was, or became, apparent that the manufacture, sale, importing, offer for sale, testing and use of its Accused Products results in infringement of the '016 Patent.  Upon information and belief, Polar has or will continue to engage in activities constituting inducement of infringement, notwithstanding its knowledge (or willful blindness thereto) that the activities it was inducing result in infringement of the '016 Patent. For example, Polar is inducing infringement of the '016 Patent by, among other things, knowingly and with intent, actively encouraging its users to make and use the Accused Products in the United States in a manner that constitutes infringement of one or more claims of the '016 Patent, knowing that such activities infringe the '016 Patent.

28. Polar encourages direct infringement of the '016 Patent at least by widely publicizing its infringing Accused Products, and instructing its customers and users how to use the same in an infringing manner.  *See, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf at pgs. 15, 18, 39, 78, 80.

29. By inducing at least the end users of the Accused Products to use the apparatuses claimed in the '016 Patent, including through its use of the aforementioned Accused Products, Polar has been and is now indirectly infringing under 35 U.S.C. § 271(b) one or more claims of the '016 Patent, either literally or under the doctrine of equivalents.

30. As a result of Polar's unlawful infringement of the '016 Patent, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial. Plaintiff is entitled to recover from Polar the damages adequate to compensate for such infringement, in the amount no less than a reasonable royalty pursuant to 35 U.S.C. § 284, which have yet to be determined. The full measure of damages sustained as a result of Polar's wrongful acts will be proven at trial.

31. Upon information and belief, Polar will continue to infringe Plaintiff's exclusive rights under the '016 Patent and will continue to damage Plaintiff, causing irreparable harm, unless and until it is enjoined by this Court.

32. Plaintiff is entitled to pre-suit damages, and is not barred from pre-suit damages by 35 U.S.C. § 287.

33. Despite having learned of the '016 Patent and the technology it covers at least as early as on or about November 21, 2018 from the November 21, 2018 Letters, Polar has not ceased its infringing activities. Polar has infringed despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights. This objectively high likelihood was known to Polar, or was so obvious that Polar should have known of this objectively high risk of infringement. Despite knowing that its actions constituted infringement of the '016 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of that patent, Polar nevertheless continued its infringing actions.

34. Thus, Polar's infringement of the '016 Patent, which is entitled to statutory presumption of validity under 35 U.S.C. § 282, has been deliberate and willful, at least since its receipt of the November 21, 2018 Letters.

## COUNT II: INFRINGEMENT OF THE '311 PATENT BY POLAR

35. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 34 as if set forth here in full.

36. Polar is not licensed under the '311 Patent, yet Polar knowingly, actively, and lucratively practices the claimed inventions of the '016 Patent.

37. Upon information and belief, Polar has directly infringed, literally or under the doctrine of equivalents, one or more claims of the '311 Patent by making, using, testing, offering to sell, and/or selling within the United States, and/or importing into the United States and its Territories, without license or authority, the Accused Products, that are covered by the claims of the '311 Patent. Such acts result in the direct infringement of the claims of the '311 Patent, including but not limited to making, using, importing, testing, offering to sell, and/or selling the apparatus of at least claim 32.

38. For example, the Polar M600 is a content player (*see, e.g.,* https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 22 (showing that M600 provides apps to users)); comprising: a receiver configured to receive content and together with the content information associated with the content (*see, e.g.,* https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 56 (showing Polar M600 comprises Bluetooth and Wi-Fi receivers); https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 15 (showing Polar M600 has Wear OS operating system and can download apps);

13

https://developer.android.com/training/wearables/apps/packaging.html#targeting (showing Android Manifest file is included in app file)); a processor coupled to the receiver and configured to process the content and the information associated with the content (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 91 (showing Polar M600 comprises MediaTek MT2601 processor)); memory coupled to the processor (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 91 (showing Polar M600 comprises 4GB internal storage + 512MB RAM)); and playing device equipment coupled to the processor and configured to provide the content to a user of the content player, the playing device equipment comprising a video player (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 91 (showing Polar M600 comprises TFT display);

https://www.mediatek.com/products/wearables/mt2601 (showing that Polar M600's MediaTek MT2601 processor comprises H.264 video encoding and decoding); see also below screenshots of video played from Polar M600):




wherein the content player is a wearable content player configured to be controlled by a wireless

remote control device comprising a remote control display, the wireless remote control device being configured to receive commands directing operations of the wearable content player (*see, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 46 (showing Polar M600 is wearable content player); https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 18 (showing Polar M600 can be wirelessly paired with smartphone); https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf, page 78, 80 (showing smartphone can receive commands to direct operations of Polar M600)); and wherein the wireless remote control device is configured to provide to the user at least a portion of the information associated with the content (see below screenshot taken from a Huawei Sensa LTE smartphone paired with Polar M600 showing list of apps installed on Polar M600 along with corresponding icons and names):



39.     Polar is therefore liable for direct infringement of the '311 Patent pursuant to 35

U.S.C. § 271(a).

40. On information and belief, Polar further indirectly infringes under 35 U.S.C. § 271(b) by inducing infringement of the claims of the '311 Patent by others, including its customers and end users of its products, to make, use, provide, supply, distribute, sell and offer to sell products and systems that infringe one or more claims of the '311 Patent in the United States. As detailed above, the Polar M600 meets each limitation of at least Claim 32. Thus, the direct infringement induced by Polar includes at least the use of the Polar M600 by its customers and/or end users.

41. Polar knows that these users are infringing the '311 Patent at least by virtue of its receipt of the November 21, 2018 Letters notifying Polar that the United States Patent and Trademark Office had allowed the claims of the application which issued as the '311 Patent, as well as of Polar's ability to secure a license. The November 21, 2018 Letters contained specific allegations that the Polar M600 would infringe the '311 Patent upon the '311 Patent's issuance. Polar has the specific intent to encourage its users to infringe the '311 Patent by practicing all of the claim limitations of one or more claims of the '311 Patent, including at least claim 32. *See, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf at pgs. 15, 18, 39, 78, 80. Polar induces these users to operate the Accused Products, knowing that these acts constitute infringement of the '311 Patent and with specific intent to encourage those acts and encourage infringement.

42. Upon Polar's gaining knowledge of the '311 Patent from the November 21, 2018 Letters, or otherwise from this Complaint, it was, or became, apparent that the manufacture, sale, importing, offer for sale, testing and use of its Accused Products results in infringement of the '311 Patent. Upon information and belief, Polar has or will continue to engage in activities

16

constituting inducement of infringement, notwithstanding its knowledge (or willful blindness thereto) that the activities it was inducing result in infringement of the '311 Patent. For example, Polar is inducing infringement of the '311 Patent by, among other things, knowingly and with intent, actively encouraging its users to make and use the Accused Products in the United States in a manner that constitutes infringement of one or more claims of the '311 Patent, knowing that such activities infringe the '311 Patent.

43. Polar encourages direct infringement of the '311 Patent at least by widely publicizing its infringing Accused Products, and instructing its customers and users how to use the same in an infringing manner. *See, e.g.*, https://support.polar.com/e_manuals/M600/Polar_M600_user_manual_English/manual.pdf at pgs. 15, 18, 39, 78, 80.

44. By inducing at least the end users of the Accused Products to use the apparatuses claimed in the '311 Patent, including through its use of the aforementioned Accused Products, Polar has been and is now indirectly infringing under 35 U.S.C. § 271(b) one or more claims of the '311 Patent, either literally or under the doctrine of equivalents.

45. As a result of Polar's unlawful infringement of the '311 Patent, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial. Plaintiff is entitled to recover from Polar the damages adequate to compensate for such infringement, in the amount no less than a reasonable royalty pursuant to 35 U.S.C. § 284, which have yet to be determined. The full measure of damages sustained as a result of Polar's wrongful acts will be proven at trial.

46. Upon information and belief, Polar will continue to infringe Plaintiff's exclusive rights under the '311 Patent and will continue to damage Plaintiff, causing irreparable harm,

unless and until it is enjoined by this Court.

47. Plaintiff is entitled to pre-suit damages, and is not barred from pre-suit damages by 35 U.S.C. § 287.

48. Despite having learned of the '311 Patent and the technology it covers at least as early as on or about November 21, 2018 from the November 21, 2018 Letters, Polar has not ceased its infringing activities. Polar has infringed despite an objectively high likelihood that its actions constitute infringement of Plaintiff's valid patent rights. This objectively high likelihood was known to Polar, or was so obvious that Polar should have known of this objectively high risk of infringement. Despite knowing that its actions constituted infringement of the '311 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of that patent, Polar nevertheless continued its infringing actions.

49. Thus, Polar's infringement of the '311 Patent, which is entitled to statutory presumption of validity under 35 U.S.C. § 282, has been deliberate and willful, at least since the issuance of the '311 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and respectfully requests that this Court enter judgment in its favor and that the Court grant Plaintiff the relief as follows:

A. Judgment that one or more claims of the '016 Patent have been infringed and/or continue to be infringed directly and/or indirectly by way of inducement, literally and/or under the doctrine of equivalents, by Polar and by others whose infringement has been induced by Polar;

B. Judgment that one or more claims of the '311 Patent have been infringed and/or continue to be infringed directly and/or indirectly by way of inducement, literally and/or under

the doctrine of equivalents, by Polar and by others whose infringement has been induced by Polar;

   C.  Judgment that Polar's infringement of the '016 Patent has been willful;

   D.  Judgment that Polar's infringement of the '311 Patent has been willful;

   E.  Holding that the '016 Patent is not invalid and not unenforceable;

   F.  Holding that the '311 Patent is not invalid and not unenforceable;

   G.  A permanent injunction enjoining Polar and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from further infringement of the '016 Patent and the '311 Patent;

   H.  Judgment that Polar account for and pay to Plaintiff all damages and costs incurred by Plaintiff as a result of Polar's infringing activities under 35 U.S.C. § 284, to adequately compensate Plaintiff for Polar's infringement of the '016 Patent and the '311 Patent, but in no event less than a reasonable royalty for the use made by Polar of the inventions claimed in the '016 Patent and the '311 Patent, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

   I.  Award to Plaintiff of the damages to which it is entitled under 35 U.S.C. § 284 for Polar's past infringement and any continuing or future infringement, including compensatory damages;

   J.  Award to Plaintiff of all costs (including all disbursements) and expenses in this action;

   K.  Award to Plaintiff of pre- and post-judgment interest on its damages; and

   L.  Award to Plaintiff of such other and further relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any and all issues so triable by right.

Dated: May 23, 2019							Respectfully submitted,

							By: /s/ Charles Wizenfeld
								Robert Whitman
								Mark Raskin
								Michael DeVincenzo
								Charles Wizenfeld

								MISHCON DE REYA NEW YORK LLP
								156 Fifth Avenue, Suite 900
								New York, NY 10010
								Telephone (212) 612-3270
								Facsimile (212) 612-3267
								robert.whitman@mishcon.com
								mark.raskin@mishcon.com
								michael.devincenzo@mischon.com
								charles.wizenfeld@mishcon.com

								*Attorneys for Plaintiff*
								*Interactive Wearables, LLC*